UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

KATHY WEULANDER,

                                                               Civil No. 23-885 (JRT/LIB)

                       Plaintiff,

v.

                                         **ORDER GRANTING IN PART AND**

NORTH STAR CREDIT UNION,            **DENYING IN PART DEFENDANT'S**

                                                **MOTION TO DISMISS**

                     Defendant.

Aaron David Sampsel, Kristen Williams, Carl E. Christensen, and Ryan Supple, **CHRISTENSEN LAW OFFICE PLLC**, 305 Fifth Avenue North, Suite 375, Minneapolis, MN 55401, for Plaintiff.

Andrew R. Shedlock, **KUTAK ROCK LLP**, 60 South Sixth Street, Suite 3400, Minneapolis, MN 55402, for Defendant.

This action arises out of Plaintiff Kathy Weulander's allegations that Defendant North Star Credit Union ("NSCU") improperly processed 68 unauthorized electronic transactions by a third-party, which transferred $187,380 out of Weulander's accounts over the span of approximately five weeks. Weulander brings ten causes of action against NSCU, including violations of the Electronic Fund Transfers Act, three breach of contract claims, negligence, conversion, and aiding and abetting tortious conduct. NSCU moves to dismiss five of the ten counts. Because the independent duty rule bars Weulander's negligence and conversion claims, the Court will grant NSCU's motion to dismiss as to those claims. And because Weulander has plausibly alleged her treble damages, breach

of E-Commerce Policy, and aiding-and-abetting claims, the Court will allow those claims to proceed.

## BACKGROUND

### I. FACTS

#### A. Weulander's Accountholder Agreement with NSCU

Kathy Weulander is a long-time savings and checking account holder with NSCU. (Am. Compl. ¶¶ 15–16, June 8, 2016, Docket No. 16.) When she opened her accounts, Weulander agreed to NSCU's Membership and Account Agreement, which describes the terms and conditions of NSCU's services. (*Id.* ¶ 21.) The agreement also incorporates NSCU's Electronic Fund Transfers Agreement and Disclosure ("EFT Agreement") and "Credit Union policies." (*Id.* ¶¶ 23, 134; *see also* Decl. of Jennifer Stedt ("Stedt Decl."), ¶ 4, Ex. C ("Membership and Account Agreement") at 2, May 19, 2023, Docket No. 15.)[1] The EFT Agreement outlines Weulander's rights and responsibilities concerning the electronic fund transfer services offered by NSCU; it explains liability and establishes the proper protocol for handling unauthorized transactions. (Am. Compl. ¶¶ 24–25; *see also* Stedt Decl. ¶ 3, Ex. B at 5.)

---

[1] At the motion to dismiss stage, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). The Court may consider exhibits attached to the pleadings and contract documents, so long as those documents do not conflict with the complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *Stahl v. U.S. Dept. of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

Additionally, a copy of NSCU's E-Commerce Policy was enclosed when NSCU provided Weulander with the Membership and Account Agreement. (Am. Compl. ¶ 153.) The E-Commerce Policy requires NSCU "to always safeguard member data" and explains the different levels of protection NSCU provides to e-commerce activities. (Decl. of Jennifer Stedt, ¶ 2, Ex. A at 3–6, June 13, 2023, Docket No. 20.)

### B.  Unauthorized Electronic Transfers of Funds

On December 13, 2022, Weulander learned of unauthorized activity in her accounts when a legitimate check she wrote was rejected due to insufficient funds. (Am. Compl. ¶ 45.) Weulander's attorney-in-fact, Steve Jacobson, immediately contacted NSCU about the rejected check. (*Id.* ¶¶ 4, 46.) Weulander and Jacobson then discovered that between November 8 and December 13, 2022, a total of $187,380 had been transferred via electronic funds transfer ("EFT") from Weulander's accounts to another bank. (*Id.* ¶¶ 36, 38.) The funds were transferred through a series of 68 individual transactions—usually in increments of $3,000 and often with multiple transfers executed on the same day. (*Id.* ¶ 36.) The EFTs effectively depleted Weulander's accounts. (*Id.* ¶ 37.) Jacobson immediately notified NSCU that these transactions were not authorized by Weulander or himself. (*Id*. ¶ 46.)

An unknown third party linked to an IP address in Indonesia was responsible for the unauthorized EFTs. (*Id*. ¶ 33.) The third party made multiple, incorrect password attempts through NSCU's online banking portal before finally gaining access to Weulander's accounts and resetting the password on November 3, 2022. (*Id*. ¶ 31.) After

resetting the password, the third party logged into Weulander's accounts 53 times over the course of four days. (*Id.* ¶ 34.) Then, the third party executed the 68 unauthorized EFTs from Weulander's savings and checking accounts over the course of approximately five weeks. (*Id.* ¶ 36.)

Weulander provided written notice to NSCU of the unauthorized EFTs and demanded a full accounting and explanation of NSCU's handling of the EFTs, in accordance with the parties' agreement terms. (*Id*. ¶¶ 49–50.) Six days later, NSCU issued payments totaling $45,000 to Weulander's savings account. (*Id*. ¶ 51.) Weulander promptly wrote again to NSCU to demand a full accounting and explanation of NSCU's handling of the EFTs. (*Id.* ¶ 52.) NSCU never provided the results of any investigation that it may have conducted, nor did it respond to Weulander's written notices concerning the unauthorized EFTs. (*Id.* ¶¶ 91, 94.)

Weulander subsequently brought this action, alleging that NSCU improperly processed the 68 unauthorized EFTs and failed to follow investigation procedures after the fraudulent activity was reported, all in violation of federal law and the parties' contract. (*Id.* ¶¶ 2, 5–6.) Weulander brings ten claims against NSCU, including for violations of the Electronic Fund Transfers Act ("EFTA"), breach of contract, negligence, conversion, and aiding and abetting tortious conduct. (*See id.*)

II.   **PROCEDURAL HISTORY**

After NSCU filed a motion to dismiss Weulander's original complaint for failure to state a claim, Weulander filed an amended complaint. (*See generally* Def.'s Mot. Dismiss,

-4-

May 18, 2023, Docket No. 9; Am. Compl.) NSCU now moves to dismiss five of the ten counts in the amended complaint: (1) a claim for treble damages under the Electronic Fund Transfers Act; (2) breach of contract through violation of the E-Commerce Policy; (3) negligence; (4) conversion; and (5) aiding and abetting tortious conduct. (Def.'s Renewed Mot. Dismiss, June 13, 2023, Docket No. 17.)

## DISCUSSION

### I. STANDARD OF REVIEW

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not have "detailed factual allegations" but must include more than conclusory statements or "a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## II. DEFENDANT'S MOTION TO DIMISS

Because Weulander's negligence and conversion claims are precluded by the independent duty rule, the Court will grant NSCU's motion with respect to those claims. The Court will deny the motion as to the remaining challenged claims.[2]

### A. Treble Damages Under the Electronic Fund Transfers Act

Weulander alleges NSCU violated various provisions of the EFTA, which establishes the rights, liabilities, and responsibilities of participants in electronic fund transfer activities. *See* 15 U.S.C. § 1693, *et seq.* In addition, Weulander alleges she is entitled to treble damages pursuant to section 1693f(e) of the EFTA. NSCU does not challenge Weulander's claims that it violated the EFTA; instead, it contends that Weulander has failed to state a claim for treble damages.

Section 1693f allows a plaintiff to seek treble damages if a financial institution (1) fails to comply with certain investigation requirements before declining to provisionally credit the plaintiff with the disputed funds, or (2) otherwise acts unreasonably in determining whether the account charges were in error. 15 U.S.C. § 1693f(e). Weulander alleges she is entitled to treble damages because NSCU did not make a good faith

---

[2] As a threshold matter, the Court will deny NSCU's first motion to dismiss as moot because Weulander filed an amended complaint in response. *See Cartier v. Wells Fargo Bank, N.A.*, 547 F. App'x 800, 803 (8th Cir. 2013) ("Some courts, as a matter of course, treat an amended complaint as mooting a pending motion to dismiss the original complaint.").

investigation or have a reasonable basis for believing that the EFTs were authorized based on evidence available at the time of any investigation performed.

The Court finds that Weulander has asserted allegations that support a plausible claim for treble damages. The plausibility standard does not require highly detailed factual allegations, as NSCU appears to maintain. *See Twombly*, 550 U.S. at 555. Instead, a plaintiff must support her allegations with sufficient facts that allow the court to reasonably infer that the defendant is liable. *Iqbal*, 556 U.S. at 678. Here, Weulander alleges that NSCU did not provide her with information regarding any investigation (or even confirm that it conducted one) despite her requests; that NSCU did not recredit Weulander's accounts for the full $187,380; and that 68 EFTs initiated by an Indonesian IP address, which nearly drained Weulander's accounts, should have put NSCU on notice that the EFTs were likely fraudulent. Weulander has pled sufficient facts to proceed with her treble damages claim.

NSCU argues that Weulander fails to support her allegations that NSCU "knowingly and willfully" concluded that the EFTs were not in error or that NSCU failed to make a good faith investigation of the EFTs.[3] But one of Weulander's central allegations is that

---

[3] NSCU also points to two cases where courts have dismissed claims for treble damages because the plaintiff failed to meet the plausibility standard. But NSCU's argument is unavailing, and the cases it cites are inapposite to this case. *See Mountcastle v. SunTrust Bank*, No. 12-885, 2013 WL 588981, at *1, 4 (D. Md. Feb. 12, 2013) (plaintiff had knowledge of the financial institution's investigation of the unauthorized activity, and he was primarily challenging the institution's rejection of his claim for relief); *Houston v. Fifth Third Bank*, No. 18-5981, 2019 WL

-7-

NSCU failed to provide her with **any** information about any investigation performed regarding the unauthorized EFTs. Weulander could not provide more detailed factual allegations about NSCU's investigation when she was never provided any documentation concerning that investigation to begin with. The Court will not penalize Weulander for NSCU's failures. Weulander therefore has plausibly alleged a claim for treble damages under the EFTA.

### B. Breach of Contract – E-Commerce Policy

Weulander brings three breach of contract claims against NSCU. Relevant to the instant motion, Weulander alleges NSCU failed to implement, utilize, and monitor appropriate fraud detection safeguards in violation of its E-Commerce Policy. In Minnesota, the elements for breach of contract are "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Lyon Fin. Servs., Inc. v. Illinois Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (quotation omitted). The only element NSCU challenges is the first one—that no contract was formed. In support, NSCU argues that the E-Commerce Policy is not a contract that NSCU could breach because it is just a policy. The Court disagrees.

---

1200574, at *1 (N.D. Ill. Mar. 14, 2019) (financial institution provided written documentation to the plaintiff concerning its investigation of the alleged unauthorized activity).

The E-Commerce Policy is incorporated as part of the terms of the parties' contract. The Membership and Account Agreement explicitly states that the parties agreed to the terms and conditions of NSCU's "Credit Union policies," and the E-Commerce Policy is one of the credit union's policies. (*See* Am. Compl. ¶ 23; Membership and Account Agreement at 2.) Even though the E-Commerce Policy is not itself a separate contract, the Membership and Account Agreement encompasses the E-Commerce Policy as part of its terms and conditions. Consequently, Weulander has plausibly alleged that NSCU breached the terms of the parties' contract by failing to adhere to the E-Commerce Policy.

**C.   Negligence**

The elements for negligence are (1) duty, (2) breach of the duty, (3) causation, and (4) damages. *Schweich v. Ziegler, Inc.*, 463 N.W.2d 722, 729 (Minn. 1990). Weulander alleges that NSCU, as a professional credit union, owed a duty of care to safeguard her funds from unauthorized access by third parties and from unauthorized EFTs. She maintains NSCU breached that duty in two ways: (1) by failing to exercise ordinary and reasonable care to safeguard Weulander's accounts from unauthorized access by third parties; and (2) by failing to follow its own error resolution policies to implement security measures that would prevent unauthorized access or unauthorized EFTs. NSCU counters that the negligence claim is precluded by the independent duty rule.

The independent duty rule provides that "when a contract defines a relationship between two parties, a plaintiff is not entitled to recover tort damages save for

exceptional cases in which a breach of contract 'constitutes or is accompanied by an independent tort.'" *Blue Cross and Blue Shield of N.C. v. Rite Aid Corp.*, 519 F. Supp. 3d 522, 545 (D. Minn. 2021) (quoting *Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 994 (D. Minn. 2006); *Wild v. Rarig*, 234 N.W.2d 775, 789 (Minn. 1975)). Under the independent duty rule, the duty supporting a negligence claim must arise from something other than a contract between the parties; it must exist "without enforcement of the contract promise itself." *U.S. Bank Nat'l Ass'n v. San Antonio Cash Network*, 252 F. Supp. 3d 714, 718 (D. Minn. 2017) (quotation omitted).[4]

The Court finds that Weulander has not alleged an independent duty beyond that in the parties' contract. Although Weulander is entitled to plead alternative theories of recovery, the duty supplying the basis of the E-Commerce Policy breach of contract claim is identical to the duty supplying the basis for the negligence claim. In both claims, Weulander essentially maintains that NSCU owed a duty to safeguard her funds. *See U.S. Bank Nat'l Ass'n*, 252 F. Supp. 3d at 718–20 (finding negligence claim failed because the

---

[4] *See also Constr. Sys., Inc. v. Gen. Cas. Co. of Wis.*, No. 09-3697, 2011 WL 3625066, at *9 (D. Minn. Aug. 17, 2011) ("[A] tort is independent from a breach of contract (and a separate cause of action can thus be brought) if a relationship would exist which would give rise to the legal duty without enforcement of the contract promise itself.") (internal quotation marks and citation omitted); *Berger v. Nationstar Mortg. LLC*, 118 F. Supp. 3d 1121, 1125 (D. Minn. 2015) ("[U]nder Minnesota law, a plaintiff does not have a cause of action for negligent breach of a contractual duty.").

duty to safeguard plaintiff's cash was "precisely the basis" for a breach of contract claim). Accordingly, the negligence claim is precluded by the independent duty rule.[5]

### D. Conversion

Weulander alleges NSCU is liable for conversion because it failed to return the full balance of the funds despite Weulander's demands. Conversion is "an act of willful interference with personal property, done without lawful justification by which any person entitled thereto is deprived of use and possession." *Cobb v. Paylease LLC*, 34 F. Supp. 3d 976, 988 (D. Minn. 2014) (quoting *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997)). Because conversion is a tort, the independent duty rule also applies. *See, e.g.*, *Klucas v. M.H. Graff & Assocs.*, No. 20-762, 2020 WL 6275971, at *3 (D. Minn. Oct. 26, 2020); *Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc.*, 896 N.W.2d 115, 125–26 (Minn. Ct. App. 2017), *aff'd*, 913 N.W.2d 687 (Minn. 2018).

Like the negligence claim above, Weulander has not identified an independent duty that NSCU owed regarding her conversion claim that is not already apparent in the parties' contract. In alleging conversion, Weulander asserts that NSCU deprived Weulander of her possessory interest in her funds by failing to fully recredit her accounts. Similarly, in alleging breach of contract, she maintains that NSCU failed to credit her accounts in accordance with the contract. (Am. Compl. ¶¶ 132–43.) These duties are the

---

[5] Because it finds that the independent duty rule precludes the negligence claim, the Court need not address NSCU's other arguments regarding the applicable standard of care that NSCU owed to Weulander or whether the economic loss doctrine bars the negligence claim.

same, so the independent duty rule also precludes the conversion claim.[6]  *Cf. Polaris Indus., Inc. v. Mangum*, No. 23-614, 2023 WL 5806741, at *6–7 (D. Minn. Sept. 7, 2023) (finding conversion claim was not precluded by independent duty rule because plaintiff pled a common law duty of confidentiality independent from the parties' contractual duties).

### E. Aiding and Abetting Tortious Conduct

Weulander alleges NSCU is liable for aiding and abetting the third party who initiated the unauthorized EFTs in the commission of fraud.  The elements for an aiding and abetting claim are: (1) that the primary tortfeasor committed a tort that caused the plaintiff an injury; (2) that the defendant knows that the primary tortfeasor's conduct constitutes a breach of duty; and (3) that the defendant substantially assisted or encouraged the primary tortfeasor in achieving the breach.  *Zayed v. Associated Bank, N.A.*, 779 F.3d 727, 733 (8th Cir. 2015) (applying Minnesota law).  The parties do not dispute the first element.  The question thus is whether Weulander has plausibly alleged that NSCU knew of the third-party's tortious conduct, and that NSCU substantially assisted or encouraged the third party.  These two elements are evaluated "in tandem." *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 188 (Minn. 1999); *In re Temporomandibular Joint Implants Prods. Liab. Litig.*, 113 F.3d 1484, 1495 (8th Cir. 1997).

---

[6] Because the Court concludes that the conversion claim is precluded by the independent duty rule, it need not address NSCU's other arguments, including whether Weulander can properly bring a conversion claim against a credit union.

Where there is a minimal showing of knowledge, there must be a greater showing of substantial assistance, and vice versa. *Witzman*, 601 N.W.2d at 188. Because Weulander plausibly alleges both knowledge and substantial assistance, the Court will deny NSCU's motion to dismiss.

### 1. Knowledge

For the knowledge element, there must have been actual knowledge of the underlying wrongs committed. *Zayed*, 779 F.3d at 733. The defendant "must **know** that the conduct they are aiding and abetting is a tort." *Id.* (emphasis in original).

Weulander has plausibly pled that NSCU had actual knowledge that the third party was committing fraud. The fact that a third party linked to an IP address in Indonesia made multiple, incorrect password attempts to gain access to Weulander's accounts, and then changed the password once gaining access, raises suspicions of fraudulent activity. In addition, the fact that the third party repeatedly logged into the online bank accounts 53 times over the course of four days is also suspicious. And then, day after day over the course of five weeks, NSCU processed 68 separate transactions initiated by the third party in Indonesia and transferred over $187,000 out of Weulander's accounts, effectively depleting them. Not only do these facts taken together suggest that NSCU knew about the multiple password attempts, repeated logins, and 68 separate transactions, but they also suggest that NSCU knew that the conduct was wrongful given how highly suspicious it was. *See Zayed*, 779 F.3d at 734 (finding that complaint as a whole "alleges circumstances strongly indicating knowledge" sufficient to survive motion to dismiss)

(quotation omitted). Plus, Weulander is unable, absent discovery, to allege more specific facts concerning NSCU's knowledge. On these facts, the Court finds that Weulander has plausibly pled that NSCU had actual knowledge of the fraud.

### 2. Substantial Assistance

For the substantial assistance element, Minnesota law requires an "affirmative step" by the aider-and-abettor that substantially advances the tortious conduct. *Am. Bank. of St. Paul v. TD Bank, N.A.*, 713 F.3d 455, 462 (8th Cir. 2013). Incidental assistance does not satisfy this element. *Camp v. Dema*, 948 F.2d 455, 460 (8th Cir. 1991). Instead, the "[a]ssistance must further the fraud itself, and not merely constitute general aid to the tortfeasor." *Zayed*, 779 F.3d at 735 (quotation omitted). In the context of professional defendants, Minnesota law requires a showing of "something more than the provision of routine professional services." *Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 720 (8th Cir. 2019) (quotation omitted).

Weulander alleges NSCU substantially assisted the third party in committing fraud by processing and transmitting the unauthorized EFTs. NSCU counters that the amended complaint fails to plead facts to support a plausible inference that NSCU substantially assisted or encouraged the third party.

*Zayed* is instructive. Plaintiffs brought an aiding-and-abetting claim against a bank that provided services to scammers engaged in a Ponzi scheme that swindled millions of dollars from investors. *Zayed*, 779 F.3d at 730, 732. The bank opened an account for a non-registered entity to hold the investors' money, and then authorized a non-signatory

to withdraw millions of dollars from the investors' money to deposit into the non-signatory's personal accounts. *Id.* at 735. The Eighth Circuit determined that such transactions were not "routine transfers" nor "quintessential banking activities." *Id.* Accordingly, the court concluded that a jury could reasonably infer that the bank misappropriated the funds in such a way that substantially assisted the scammers. *Id.*

Similarly, Weulander pleads sufficient facts to support her claim that NSCU substantially assisted the third party in Indonesia. There is no doubt that NSCU's processing of the 68 unauthorized EFTs assisted the third party in the commission of fraudulent conduct, as the third party could not have transferred Weulander's funds out of her accounts if not for NSCU's processing of the EFTs. Thus, the issue becomes whether processing the 68 unauthorized EFTs constitutes NSCU's routine professional services. *See Zayed*, 913 F.3d at 720. In other words, the question is whether it was routine for NSCU to process and transmit, without asking questions over the course of five weeks, 68 separate transactions initiated by someone in Indonesia, and which effectively depleted an accountholder's accounts. Like in *Zayed*, a jury could reasonably infer that the 68 unauthorized EFTs were not "routine transfers" such that NSCU knowingly facilitated the fraudulent EFTs from Weulander's accounts.

Therefore, the Court finds that the amended complaint plausibly pleads all three elements of an aiding-and-abetting claim.

## CONCLUSION

Because the negligence and conversion claims are precluded by the independent duty rule, the Court will dismiss those claims. At the same time, the Court concludes that Weulander has plausibly pled a claim for treble damages, breach of E-Commerce Policy, and aiding and abetting tortious conduct.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Defendant's Motion to Dismiss [Docket No. 9] is **DENIED** as moot; and

2. Defendant's Renewed Motion to Dismiss [Docket No. 17] is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. The motion is **GRANTED** as to Counts VIII (negligence) and IX (conversion). Accordingly, those claims are **DISMISSED with prejudice**.

   b. The motion is **DENIED** as to Counts IV (treble damages), VII (breach of contract – E-Commerce Policy), and X (aiding and abetting tortious conduct).

DATED: February 7, 2024
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge